52 P.3d 485 (2002)
147 Wash.2d 98
Virginia L. SMITH, Respondent,
v.
WHATCOM COUNTY DISTRICT COURT, and the Honorable Edward Ross, Appellant.
No. 70817-7.
Supreme Court of Washington, En Banc.
Argued March 12, 2002.
Decided August 15, 2002.
*487 David McEachran, Whatcom County Prosecutor, Thomas Seguine, Deputy, Bellingham, for Appellant.
Eric Weight, Bellingham, for Respondent.
*486 OWENS, J.
Virginia Smith was jailed by the Whatcom County District Court for nonpayment of fines that were seven and five years old. The superior court granted a writ of habeas corpus on the ground that former RCW 3.66.068 (1999) limits the district court's subject matter jurisdiction to jail a defendant for nonpayment of fines to a period of two years after a conviction. The district court appeals. Although we hold that former RCW 3.66.068 (1999) does not apply to this case, we nevertheless hold that the district court's exercise of its jurisdiction did not comport with due process. We accordingly affirm the writ.

FACTS
Two criminal convictions are the basis for this writ of habeas corpus. In district court case number 6942747, Smith pleaded guilty on August 9, 1993, to No Valid Operator's License (NOVOL) and Nonappearance After a Written Promise to Appear. The court fined her $350. No jail time was imposed. In district court case number 7873614, Smith pleaded guilty on May 31, 1995, to Driving Under the Influence (DUI) and Driving With a Suspended License in the Third Degree. She was fined $1,525, sentenced to 365 days in jail with 363 days suspended, and placed on probation for two years. A condition of probation was completion of alcohol treatment.
A probation hearing for the DUI case was held on May 5, 1996. At that time Smith had paid only $25 toward her fines, and had not completed alcohol treatment. The district court reinstated probation on condition of full compliance. Smith still did not pay the fine and still did not undergo alcohol treatment. On July 26, 1996, the district court revoked probation. Upon revocation the court imposed 15 days in jail of the 363 days originally suspended. The court waived the probation *488 fee, reducing Smith's DUI fine to $950 with $925 owing.
In both cases the court and Smith entered into time payment agreements within a few days of sentencing. These allowed Smith to make installment payments on her fines. As noted, Smith made only one $25 payment. The August 1993 NOVOL conviction was removed from the time payment agreement on December 9, 1993, and sent to a collection agency on January 18, 1994. The May 1995 DUI conviction was removed from time payment on July 17, 1996, and sent to the collection agency on September 16, 1996. However, collections failed as well, and both cases were returned as uncollectible on November 16, 1999.
In the meantime the court advised Smith on October 20, 1993, that she could work off her fines through community service in a parks program. Between June 6, 1995, and January 2, 1996, Smith signed up for the parks program four times. However, she never contacted the program to begin community service.
After collections returned the fines, the district court held a fine review hearing for both cases on February 11, 2000. The court ordered Smith to pay $25 per month or contact the parks program, and scheduled another hearing for March 31, 2000. Smith did not appear for the follow-up hearing. On June 22, 2000, the court issued a bench warrant for failure to pay the fines or appear at the hearing.
On October 24, 2000, Smith was arrested on the bench warrant and a hearing was held. The prosecutor argued that Smith's case was a "pay or stay" situation. A public defender appeared on Smith's behalf even though no formal appointment of counsel had been made. The public defender argued that there was no jurisdiction to place Smith in jail because the cases were more than two years old. Siding with the state, the district court ordered that Smith be held in jail on "pay or stay" status with credit toward her fines of $40 per day. The court set bail at $1,175, the unpaid amount of Smith's fines.
Smith petitioned for a writ of habeas corpus in superior court. She alleged that her restraint was unlawful for two reasons: (1) because the district court's jurisdiction over the two convictions expired after two years; and (2) because the district court did not first find that Smith was able but unwilling to pay her fines. The superior court released her pending its decision, and ultimately granted the writ. The superior court concluded that the district court lacked jurisdiction to jail Smith, and decreed that the district court, "shall not issue any warrants or incarcerate defendants for non-payment of fines in any other cases before the court more than two years after the imposition of sentence." Clerk's Papers at 6. The district court appeals.

ISSUES
(1) Did the district court have statutory jurisdiction to jail Smith for nonpayment of fines more than two years after her convictions?
(2) Did the district court's exercise of jurisdiction comport with due process?
(3) Was the writ of habeas corpus proper?

ANALYSIS
Jurisdiction. Washington's courts of limited jurisdiction are created by the legislature. Const. art. IV, §§ 1, 12. The legislature has sole authority to prescribe their jurisdiction and powers. Young v. Konz, 91 Wash.2d 532, 540, 588 P.2d 1360 (1979). The subject matter jurisdiction of district courts is therefore limited to that affirmatively granted by statute. Whether a district court has subject matter jurisdiction is a question of law reviewed de novo. Crosby v. Spokane County, 137 Wash.2d 296, 301, 971 P.2d 32 (1999). This case requires sorting out several related statutes.
The affirmative grant of jurisdiction in this case is RCW 10.04.110. It provides:
In all cases of conviction, unless otherwise provided in this chapter, the judge shall enter judgment for the fine and costs against the defendant, and may commit him to jail until the amount of such fine and costs owing are paid,.... *489 This statute authorizes a district court to jail a defendant for nonpayment of a fine. RCW 10.04.110 further provides: "The amount of such fine and costs owing shall be computed as provided for superior court cases in RCW 10.82.030 and 10.82.040." Those statutes authorize commitment for failure to pay fines assessed in superior court. The amount of a fine owing is reduced by any sums paid and by an established amount for every day the defendant spends in jail. RCW 10.82.030. "Pay or stay" status is thus affirmatively authorized by statute for defendants with unpaid fines.
RCW 10.01.180 says that a defendant who defaults in the payment of a fine or an installment "is in contempt of court as provided in chapter 7.21 RCW." RCW 10.01.180(1). It authorizes the court to issue a warrant for the defendant's arrest. Id. It is clear that a defendant may be jailed for nonpayment, since RCW 10.01.180(3) applies "[i]f a term of imprisonment for contempt for nonpayment ... is ordered." This subsection would be surplusage if such imprisonment could not be ordered.
Chapter 7.21 RCW, to which RCW 10.01.180 refers, concerns contempt of court. It defines "contempt" inter alia as "intentional ... [d]isobedience of any lawful judgment." RCW 7.21.010(1)(b). "Contempt may be criminal or civil." State v. Breazeale, 144 Wash.2d 829, 842, 31 P.3d 1155 (2001). "The primary purpose of the civil contempt power is to coerce a party to comply with an order or judgment." Id. A civil contempt sanction is allowed as long as it serves coercive, not punitive, purposes. In re Pers. Restraint of King, 110 Wash.2d 793, 802, 756 P.2d 1303 (1988). Criminal contempt is punitive. Id. at 800, 756 P.2d 1303. A prosecutor must file a complaint or an information to seek a punitive sanction. RCW 7.21.040(2)(a). In criminal contempt cases, the contemnor is afforded "those due process rights extended to other criminal defendants," King, 110 Wash.2d at 800, 756 P.2d 1303, and has a right to a jury trial, State v. Boatman, 104 Wash.2d 44, 46, 700 P.2d 1152 (1985).
The contempt proceeding authorized by RCW 10.01.180 is civil. The purpose of "pay or stay" imprisonment is to coerce the defendant to pay the fine imposed by the judgment. The defendant can avoid jail by paying. A contempt sanction is civil "if it is conditional and indeterminate, i.e., where the contemnor carries the keys of the prison door in his own pocket and can let himself out by simply obeying the court order." King, 110 Wash.2d at 800, 756 P.2d 1303. Giving the defendant credit toward the fine for each day in jail renders the term of imprisonment determinate, but not punitive. Each day remains conditional on the defendant's choice to pay or not.
Seeking a civil contempt remedy for nonpayment of fines under RCW 10.04.110 and 10.01.180 is seeking enforcement of a judgment. Under RCW 10.04.110, the district court enters "judgment" for the fine after a conviction (emphasis added). Collecting a fine is consistently referred to as an "execution." Although it was not done in this case, a defendant may stay a fine under RCW 10.04.120 by procuring sufficient sureties. The statutory language is telling: "Every defendant may stay the execution for the fine and costs for thirty days,...." RCW 10.04.120 (emphasis added). When the defendant's recognizance is entered on the docket, it has "the same effect as a judgment." Id. (emphasis added). If the fine is not paid in 30 days under this procedure, then, proceeding "as in like cases in the superior court," id., "a joint execution shall issue against the defendant and the bail, and an execution against the body of the defendant, who shall be committed to jail," RCW 10.82.025 (emphasis added). Extending time to pay a fine is described as staying its execution, the promise to pay is described as having the effect of a judgment, and sending the defendant to jail is an execution. RCW 10.01.180 provides that a fine may be collected "by any means authorized by law for the enforcement of a judgment." RCW 10.01.180(5) (emphasis added). It authorizes a "levy of execution." Id. (emphasis added). Using these terms to describe these procedures shows that the legislature understands collection of a fine to be the execution of a judgment.
*490 The state has 10 years to seek collection of Smith's fines. This is because it has 10 years to seek enforcement of a judgment:
Except as provided in subsection[ ] ... (4) of this section, the party in whose favor a judgment of a court of record of this state or a district court of this state has been... rendered, ... may have an execution issued for the collection or enforcement of the judgment at any time within ten years from entry of the judgment.
RCW 6.17.020(1). This statute expressly applies to district courts. It also applies to criminal judgments. The exception in subsection (4) gives an alternative limitation period to parties awarded restitution, crime victims' assessments and other obligations pursuant to criminal judgments. These criminal judgments could not be excepted from subsection (1) if "judgment" as used there did not include criminal judgments. "[P]rovisos and exceptions remove something from the enacting clause that would otherwise be contained therein." Tyler Pipe Indus., Inc. v. Dep't of Revenue, 96 Wash.2d 785, 788, 638 P.2d 1213 (1982).
This limitation is also consistent with the common law rule: that the government may have execution for a fine as for a civil judgment. Crooker v. United States, 325 F.2d 318, 321 (8th Cir.1963). In The King v. Woolf, 1 Chitty 401, 438-39 (K.B.1819), the court held that under the common law a writ of levari facias (used to execute a civil judgment) would issue for a fine due to the King, since a fine constituted a debt of record. The statute of limitation on executing a civil judgment is also 10 years. RCW 6.17.020(1), 4.16.020(2).
Smith contends, however, that the district court's jurisdiction to jail her for nonpayment is limited to two years by former RCW 3.66.068 (1999).[1] That statute provided:
For a period not to exceed ... two years after imposition of sentence ... the court has continuing jurisdiction and authority to suspend the execution of all or any part of its sentence upon stated terms, including installment payment of fines.
This statute and its companions, former RCW 3.66.067 (1984) and RCW 3.66.069, form the district court's probation jurisdiction. Former RCW 3.66.068 (1999) gave the court the option of not executing part or all of its sentence if the defendant carried out the prescribed conditions. For example, the court could suspend execution of part of a sentence imposed for a DUI conviction if the defendant underwent alcohol treatment. RCW 3.66.069 gives the court the authority to revoke the suspension, and impose the remainder of the sentence, if the defendant does not carry out the conditions.
Smith's argument is based on State v. Jorgenson, 48 Wash.App. 205, 737 P.2d 1277 (1987), a case she contends is directly on point. In Jorgenson, two defendants were placed on probation following misdemeanor convictions. A condition of probation was making installment payments on their fines. The defendants made payments until the probationary period had elapsed, after which they stopped. The Court of Appeals held that under former RCW 3.66.068 (1983) the court had no jurisdiction to issue arrest warrants for violating probation when they stopped making payments. Id. at 208, 737 P.2d 1277. Judge Grosse concurred. He agreed that the court was without jurisdiction with respect to the defendants' compliance with probation, but he believed "the court arguably would have retained jurisdiction to collect the fines" if the arrest warrants had been issued pursuant to RCW 10.01.180. Id. at 209, 737 P.2d 1277 (Grosse, J., concurring).
Jorgenson is inapposite. The defendants in Jorgenson fully carried out the conditions of their probation by making payments for the prescribed time. Smith did not carry out the conditions of probation. Although one of the conditions for having part of the DUI sentence suspended was undergoing alcohol treatment, she never did. The district court therefore exercised its power under RCW *491 3.66.069 to revoke probation and impose part of the originally suspended sentence. Jorgenson dealt with the effect of the defendants' compliance with the terms of probation. Since Smith did not comply with the court's terms, Jorgenson is not relevant.
There is no basis in the literal language of former RCW 3.66.068 (1999) for applying it to this case. It gave the district court the authority "to suspend the execution" of a sentence. It then limited that authority to "a period not to exceed ... two years." The statute does not apply to Smith's NOVOL conviction, because that conviction did not result in a suspended sentence. Nor does it apply to Smith's DUI conviction. The sentence for the DUI did include suspended jail time, but the court revoked the suspension and imposed the remainder of the sentence (in part) within two years. In the NOVOL case, the district court did not purport to exercise its authority under former RCW 3.66.068 (1999) at all, and in the DUI case the court exercised its authority under the statute, but did not purport to do so for more than two years. It is therefore impossible to say that Smith's incarceration was somehow unlawful under former RCW 3.66.068 (1999).
In fact, none of Smith's fines were suspended. Even in the DUI case, in which the court originally suspended part of Smith's jail sentence, the court never suspended the fines. The two-year limitation on the court's authority to suspend sentences does not relate to enforcing sentences that were never suspended. The state made the same argument in Jorgenson. It was rejected in that case, but for a reason not present in this one. The Jorgenson probation agreements "specifically noted probation was `in lieu of jail time or other punishment.'" 48 Wash.App. at 208, 737 P.2d 1277. The court said that fines were "`other punishment,'" and concluded that probation was therefore in lieu of the fines too. Id. Thus, the probation agreements did not allow the court to collect the fines after the conditions of probation had been carried out. But there is no such agreement in this case. Smith was never relieved of the obligation to pay her fines on the condition that she complete probation.
That former RCW 3.66.068 (1999) mentioned "installment payment of fines" does not help Smith. This case did involve installment payment. First, when both fines were imposed, the court and Smith entered into installment payment agreements. Second, when Smith's fines were returned from collections the court gave her the option of making payments (again) before sending her to jail. Former RCW 3.66.068 (1999) provided that installment payment could be imposed as a "term[ ]" of probation. That means the court could condition a suspended sentence on the defendant's no making payments. It does not mean that the fine suddenly became a suspended sentence or subject to the two-year limitation for collection. Judge Grosse recognized this in his Jorgenson concurrence when he opined that "payment of fines was [not] necessarily a condition of probation only, as distinct from their being a separate and distinct part of the judgment and sentence." 48 Wash.App. at 209, 737 P.2d 1277. Furthermore, the court has independent authority to allow installment payment under RCW 10.01.170. If installment payment of fines were only permissible as a term of probation under former RCW 3.66.068 (1999), then a default would be a probation violation every time. There would be no reason, then, to treat the default as contempt under RCW 10.01.180. We presume that drafters of legislation do not use superfluous words. In re Recall of Pearsall-Stipek, 141 Wash.2d 756, 767, 10 P.3d 1034 (2000). The legislature does not enact superfluous statutes either.
Finally, to apply former RCW 3.66.068 (1999) to this case would contradict RCW 10.01.180. Smith characterizes the jail time ordered by the court as an execution of jail time imposed as part of her original sentence but suspended at that time. She argues that the court had no authority to impose "suspended jail time." Resp't's Br. at 21. Smith is saying that to impose jail time for nonpayment, the court would have to reach back to the original sentence and draw upon jail time imposed, but never executed. This argument conflicts with the legislative treatment of nonpayment as contempt. For example, take Smith's NOVOL conviction. Jail time was not imposed. Under *492 her theory, she could never be jailed for not paying that fine. However, RCW 10.01.180(1) clearly defines nonpayment as contempt, RCW 10.01.180(3) clearly contemplates that jail time may be imposed for nonpayment, and RCW 7.21.030(2)(a) clearly authorizes jail time as a remedial sanction. The jail time imposed for nonpayment is not part of the sentence. See State v. Tullock, 118 Wash. 496, 501, 203 P. 932 (1922); In re Habeas Corpus of St. Clair, 140 Wash. 675, 677, 250 P. 55 (1926). Imposing jail time for nonpayment was not an execution of originally suspended jail time.
We hold that the district court had subject matter jurisdiction to enforce Smith's fines by jailing her for nonpayment. We further hold that the state is limited to 10 years in which to collect Smith's fines. This decision does not vitiate the two-year limit on probation, nor will it lessen the use of probation in district court. A district court may not ask a defendant to carry out terms of probation for 10 years. That part of the superior court's order prohibiting collection of fines after two years is vacated.
Due Process. Having determined that Smith's commitment is supported by statutory jurisdiction, we must address her other contention not reached by the superior court: that it violated due process. We conclude that it did. We therefore affirm the writ of habeas corpus.
In Bearden v. Georgia, 461 U.S. 660, 672-73, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the United States Supreme Court held that it violated due process to revoke probation for nonpayment of fines where the defendant was unable to pay because he was indigent. This holding was based on the distinction between a defendant willfully refusing to pay, and a defendant who through no fault is unable to pay. The court held that "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." Id.
Bearden was based on two prior decisions of the United States Supreme Court. In Tate v. Short, 401 U.S. 395, 398, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), the court held that a state cannot impose a fine and automatically convert it to jail time solely because the defendant is indigent and unable to pay. In Williams v. Illinois, 399 U.S. 235, 241-42, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), the court said a state could not convert a fine to jail time because the defendant was indigent and thereby impose a jail term longer than the statutory maximum for the crime. The general rule is that a defendant may not be jailed for nonpayment of a fine where the failure to pay is solely because of indigence. On the other hand, "[i]f the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection." Bearden, 461 U.S. at 668, 103 S.Ct. 2064.
The district court was therefore required to find that Smith's failure to pay her fines was willful. Bearden requires consideration of ability to pay, bona fide efforts to acquire the resources to pay, and, if necessary, alternative measures other than imprisonment. 461 U.S. at 672, 103 S.Ct. 2064. In Washington the court may place the burden on the defendant to prove inability to pay. State v. Bower, 64 Wash.App. 227, 234, 823 P.2d 1171 (1992). However, this does not eliminate the court's duty to inquire, which Bearden plainly demands. Because the record shows no inquiry at all into Smith's ability to pay her fines, much less the three-part inquiry required by Bearden, her commitment violated the fourteenth amendment to the United States Constitution.
In addition, the procedure employed by the district court fell far short of that required by Washington law. Although RCW 10.01.180(1) says that nonpayment "is" contempt, that conclusion does not flow automatically from the defendant's failure to pay. RCW 10.01.180(4) itself provides that the court may find that nonpayment is not contempt. But more importantly, RCW 7.21.010(1)(b) defines contempt as "intentional" disobedience to a judgment. With reference to Bearden, this court has construed this language to eliminate the possibility of imprisonment for inability to pay in the context of a defendant's criminal liabilities. State v. Curry, 118 Wash.2d 911, 918, 829 P.2d 166 (1992) (victim penalty assessment). *493 Washington law therefore follows Bearden in requiring the court to find that a defendant's failure to pay a fine is intentional before remedial sanctions may be imposed.
Moreover, Smith was not properly cited for contempt. "Civil show cause procedures are an appropriate means of securing compliance with a court order." Breazeale, 144 Wash.2d at 842, 31 P.3d 1155. A defendant must have notice that failure to pay a fine may be contempt of court and may result in being sent to jail. Smith was also entitled to a public defender. "[W]herever a contempt adjudication may result in incarceration, the person accused of contempt must be provided with state-paid counsel if he or she is unable to afford private representation." Tetro v. Tetro, 86 Wash.2d 252, 255, 544 P.2d 17 (1975). The court must also comply with the limits placed on the contempt power. In King, we stated that a contemnor should be jailed only "`when no reasonable or effective alternatives are available.' " King, 110 Wash.2d at 802, 756 P.2d 1303 (quoting Yamaha Motor Corp. v. Harris, 29 Wash.App. 859, 866, 631 P.2d 423 (1981)). A formal finding is not required, but the record must show that "`all less restrictive alternatives ... failed.'" Id. at 802, 756 P.2d 1303 (quoting State v. Norlund, 31 Wash.App. 725, 729, 644 P.2d 724 (1982)). In this case Smith's incarceration began before she was given notice that a show cause hearing would be held for contempt, and before she was given counsel.
The district court argues that the invited error doctrine bars Smith from asserting Bearden. It argues she somehow prevented the court from reaching the issue of her ability to pay at the hearing. The district court relies on In re Personal Restraint of Thompson, 141 Wash.2d 712, 723-24, 10 P.3d 380 (2000), which stated that the doctrine of invited error prohibits a party from knowingly setting up an error by an affirmative act and then complaining on appeal. Because there is no evidence Smith knowingly prevented the court from addressing Bearden by arguing that it lacked jurisdiction, invited error does not apply.
Habeas Corpus. The district court's Bearden violation is an independent ground for granting a writ of habeas corpus. Under RCW 7.36.140 this court is required to determine whether or not the petitioner has been denied a right guaranteed by the federal constitution. See Thorne v. Callahan, 39 Wash.2d 43, 48, 58, 234 P.2d 517 (1951). Further, when the petitioner is jailed for contempt, habeas corpus relief is available in a superior tribunal when the facts adduced in the inferior tribunal do not amount to contempt as a matter of law. 2 Thomas Carl Spelling, A Treatise on Injunctions and Other Extraordinary Remedies § 1243, at 1078 (2d ed.1901); In re Habeas Corpus of Dill, 32 Kan. 668, 688, 5 P. 39 (1884); People ex rel. Hackley v. Kelly, 24 N.Y. 74 (1861).
Bearden establishes that willfulness is an element of contempt for nonpayment of fines. RCW 7.21.010(1) includes a similar requirement. Since the record from the district court does not include the required finding of willfulness, Smith's failure to pay does not amount to contempt as a matter of law. A writ of habeas corpus is therefore proper.

CONCLUSION
The district court had subject matter jurisdiction to jail Smith for nonpayment of fines. It was unaffected, in this case, by the two-year limitation on probation jurisdiction in former RCW 3.66.068 (1999). The state is limited to 10 years to seek collection of the fines. However, the district court's actions in this case did not meet the requirements of Bearden. The writ, as modified, is affirmed.
ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE and CHAMBERS, JJ., concur.
NOTES
[1] RCW 3.66.067 and 3.66.068 were amended by Laws of 2001, Reg. Sess., ch. 94, §§ 1-2. The legislature changed the language relating to suspended and deferred sentences. The parties do not contend the changes are relevant here. They rely on the language in effect at the time of Smith's sentences. Appellant's Opening Br. at 28 n. 5; Resp't's Br. at 19. We do too.