14 P.3d 850 (2000)
103 Wash.App. 783
STATE of Washington, Appellant,
v.
Jason D. TODD, Respondent.
No. 25380-1-II.
Court of Appeals of Washington, Division 2.
December 21, 2000.
*851 David P. Horton, Ryan Sells Uptegraft & Decker, Silverdale, for Respondent.
Tom L. Morris, Kitsap Co. Deputy Pros. Atty., Port Orchard, for Appellant.
SEINFELD, J.
A juvenile court struck the State's motion to revoke an order deferring disposition of Jason Todd's conviction of residential burglary. The State appeals. Because the State properly moved before the expiration of the deferral period and presented uncontroverted evidence establishing Todd's violation of the deferral conditions, we conclude that the juvenile court had jurisdiction to revoke the disposition order and erred in striking the State's motion. Consequently, we reverse and remand.

FACTS
The State charged Todd in juvenile court with residential burglary. On October 12, 1998, the juvenile court entered a deferred disposition order pursuant to RCW 13.40.127. The order subjected Todd to 12 months' community supervision and ordered him to have no further "law violations."[1]
On September 22, 1999, the State moved to revoke Todd's deferred disposition order, stating as follows:
I submit to the Court that good cause exists for this Court to review and revoke the Order of Deferred Disposition filed herein on October 13, 1998; to wit: The juvenile is in violation of Section 2.4 of the above-named Order of Deferred Disposition; in that, on or about September 21, 1999 the Prosecutor's Office informed this Officer that [Todd] was to be charged with Malicious Mischief.
Clerk's Papers at 17-18. The State charged Todd on the same date with first degree malicious mischief, alleged to have occurred on July 17, 1999, and he was arraigned on that charge on September 30. The court set an October 12 hearing date to hear the State's revocation motion.
Todd denied the violation at the October 12 hearing and the parties agreed to continue the matter to November 16. But on October 19, the parties reached an agreement. Todd agreed to plead guilty to the malicious mischief charge and to stipulate to the subsequent revocation of the deferred disposition on the residential burglary charge.
On November 2, the court accepted Todd's guilty plea to the malicious mischief charge and sentenced him accordingly. But the court refused to accept Todd's admission as to the violation of the deferred disposition order because "there's an issue here regarding when the law violation occurred[.]" The court then continued the matter until November 16 for argument on this issue.
At the November 16 hearing, both parties agreed that a law violation occurred during the deferred disposition period; thus, "it would be a correct ruling for the court to revoke the deferred disposition in [Todd's] case[.]" Nonetheless, the juvenile court found that the State's motion to revoke was untimely and that the State should have sought an extension of the deferral period under RCW 13.40.127(8). Therefore, it struck the motion to revoke the disposition order and dismissed Todd's conviction for residential burglary. See RCW 13.40.127(9).
The State now appeals this decision.

ANALYSIS
The State asserts that Todd violated the terms of the disposition order on the date that he committed the new offense, July 17, 1999, and that it timely moved to revoke the deferred disposition. Todd responds that the State's motion was defective and, thus, did not stay the jurisdiction of the court to revoke the disposition order. He also argues that the State could have used RCW *852 13.40.127(8) to extend the juvenile court's jurisdiction.[2]
We review the juvenile court's decision de novo, deciding whether it was based on a lack of jurisdiction or the application of the Juvenile Justice Act of 1977(JJA). See In re J.J., 96 Wash.App. 452, 455, 980 P.2d 262 (1999) (review trial court's application of law de novo), review denied, 139 Wash.2d 1017, 994 P.2d 847 (2000); State v. Y .I., 94 Wash.App. 919, 922, 973 P.2d 503 (1999) (whether court has jurisdiction is question of law reviewed de novo).
RCW 13.40.127 provides for the deferred disposition of juvenile offenders. The statute provides that, after a finding or plea of guilt, the juvenile court may defer disposition of the juvenile's case for a period not to exceed one year. RCW 13.40.127(2) and (4). If, at the expiration of the deferral period, the juvenile has satisfied the terms of the disposition order, the juvenile's conviction is vacated and the court must dismiss the case with prejudice. RCW 13.40.127(9).
The statute further provides that the State has the burden of proving, by a preponderance of the evidence, any failure of the juvenile to comply with the community supervision provisions of the disposition order.[3] RCW 13.40.127(6). The juvenile's alleged lack of compliance with the disposition order "shall be determined by the judge upon written motion by the prosecutor [and][i]f a juvenile fails to comply with terms of supervision, the court shall enter an order of disposition." RCW 13.40.127(7). Finally, the statute provides that the court may continue the case for an additional one-year period for good cause. RCW 13.40.127(8).
Todd argues that the motion and affidavit were defective because what was labeled an "affidavit" was actually in the form of a "declaration." But we find no indication, and Todd provides no supporting citation to the record, that the juvenile court noted this alleged defect. Further, Todd provides no authority explaining the legal significance of this allegation. Thus, we conclude that this contention is meritless.
Second, Todd asserts that the State's motion to revoke the deferred disposition failed to allege a violation of the disposition order. He argues that the motion merely stated that he "was to be charged with malicious mischief" and that being charged with a crime is not a violation.
On November 2, the court asked the parties to explain the meaning of the term "further law violations," as used in the disposition order and how to determine the date of a law violation. In its November 16 ruling, the court did not appear to rely on alleged defects in the State's motion as a basis for rejecting Todd's admission. Rather, the court appeared to reach the legal conclusion that Todd's alleged further law violation should have been adjudicated prior to the expiration of the deferral period.
In any event, the State's motion was adequate to give Todd notice of the allegation. RCW 13.40.127(7) merely requires the State to submit a motion to revoke. It does not require a detailed description of the facts supporting the violation. It is appropriate for the State to present additional evidence if and when the juvenile denies the violation. See State v. May, 80 Wash.App. 711, 714 n. 2, 911 P.2d 399 (1996) (noting juvenile received due process he was entitled to when served with motion and affidavit and presented evidence at subsequent hearing); City of Seattle v. Lea, 56 Wash.App. 859, 860-61, 786 P.2d 798 (1990) (holding that adult probationer entitled to written notice of claimed probation violations and opportunity to present evidence).
*853 Although it is not possible to determine the basis of the juvenile court's ruling with certainty, it appears to us that the juvenile court was concerned that the State failed to establish Todd's violation until after the expiration of the deferral period. Because of this, the court concluded that it no longer had jurisdiction to consider the State's motion.[4]
The statute does not contain timing language relevant to this issue. See RCW 13.40.127(6) and (7). But the reasoning of May is instructive, although the juvenile court found that May did not apply in this case. In May, the Court of Appeals interpreted RCW 13.40.200, which deals with modifications of disposition orders; the court did not address RCW 13.40.127. 80 Wash. App. at 714, 911 P.2d 399. But the May court's reasoning is analogous.
In May, the juvenile court entered a disposition order on January 12, 1993. The order included 12 months of community supervision. May, 80 Wash.App. at 712, 911 P.2d 399. On January 10, 1994, the probation office informed the prosecutor's office that May had violated his disposition order by failing to perform required hours of community service and in other ways. May, 80 Wash.App. at 713, 911 P.2d 399. On January 20, 1994, the prosecutor's office filed a motion instituting a show cause hearing for February 3 regarding the violations. May, 80 Wash.App. at 713, 911 P.2d 399.
At the February 3 hearing, May admitted the violations but argued that the community supervision period had expired one week before the State instituted the violation proceedings. Thus, he argued, the court lacked jurisdiction. May, 80 Wash.App. at 713, 911 P.2d 399. The court rejected May's argument and found that it had jurisdiction to enforce the disposition order until May turned 18. May, 80 Wash.App. at 713-14, 911 P.2d 399.
The Court of Appeals reversed, holding that "the court's jurisdiction to enforce its disposition order terminates when the community supervision period expires, unless a violation proceeding is then pending before the court. We do not believe the State will be unduly burdened by the requirement that it institute violation proceedings before expiration of the supervisory period." May, 80 Wash.App. at 716-17, 911 P.2d 399 (emphasis added).
In its analysis, the May court noted that, unlike the adult probation statute that provides a formal means of terminating supervision, the juvenile offender is "at the mercy of the State's administrative bureaucracy." 80 Wash.App. at 716, 911 P.2d 399. Thus, to protect the juvenile from the bureaucracy, the court favored a bright line rule that clearly defines the juvenile court's jurisdiction. May, 80 Wash.App. at 716, 911 P.2d 399.
Similarly, in Y.I., 94 Wash.App. at 923-24, 973 P.2d 503, the Court of Appeals found that the May court's reasoning applied to both the financial obligation and community supervision provisions of a disposition order. In Y.I., the State petitioned for review of the conditions of four disposition orders well after the supervision period of those orders had passed. 94 Wash.App. at 921, 973 P.2d 503. The Court of Appeals reversed the lower court's determination that it had jurisdiction, holding that the May court's analysis applied and, thus, the juvenile court's jurisdiction to enforce the disposition orders terminated when the community supervision periods ended. Y.I., 94 Wash.App. at 923-24, 973 P.2d 503.
Under May and Y.I., the juvenile court loses jurisdiction to enforce a disposition order only if the State fails to institute violation proceedings before the expiration of the deferral period. Both cases express a concern that a juvenile "not be under a constant threat of incarceration until his or her 18th birthday." Y.I., 94 Wash.App. at 924, 973 P.2d 503; see also May, 80 Wash.App. at 716, 911 P.2d 399. This rule, the courts found, would not unduly burden the State and would "discourage administrative inertia in handling matters concerning juvenile offenders." *854 May, 80 Wash.App. at 717, 911 P.2d 399; see also Y.I., 94 Wash.App. at 924, 973 P.2d 503.
Here, the State instituted proceedings before the expiration of the deferral period. It did so by filing a motion that gave Todd sufficient notice to satisfy due process as to the basis for the State's motion. Application of May bright line rule does not unduly burden the State in the context of revoking a deferred disposition order, and it furthers the policy of clearly delineating the juvenile court's jurisdiction and discouraging administrative inertia. Further, there is no indication here that the State failed to diligently pursue revocation proceedings to resolve the case soon after the deferral period expired.
To require the State to adjudicate the violation before the end of the deferral period or to seek an extension under RCW 13.40.127(8) could unduly burden the State, thereby upsetting the balance the May court sought to achieve. If a violation were to occur late in the deferral period, it might not be possible for the State to obtain a court ruling before the end of the deferral period. Such a rule would also put the State at the mercy of the juvenile's attempts to delay adjudication past the deferral deadline.
Nor would requiring the State to seek a one-year extension under RCW 13.40.127(8) in a case such as this further the JJA's purpose of providing "a clear policy ... to determine the jurisdictional limitations of the courts, institutions, and community services[.]" RCW 13.40.010(2)(j). RCW 13.40.127(8) requires a showing of "good cause" to obtain an extension. This is an inherently fact-based determination; thus, unlike May's "bright line rule," such a rule would not provide a clear limitation on the juvenile court's jurisdiction.
Further, the plain language in RCW 13.40.127(8) indicates that the legislature intended it for different circumstances than those presented here. The statute states that "[a]t any time following deferral of disposition the court may, following a hearing, continue the case for an additional one-year period for good cause." RCW 13.40.127(8). The reference to extension for an additional year suggests a legislative intent to offer the court additional flexibility when the court determines that the juvenile might require or benefit from additional supervision. See RCW 13.40.010(2)(f) (noting one of JJA's purposes is to "[p]rovide necessary treatment, supervision, and custody for juvenile offenders"). This one-year extension rule does not apply where the State institutes violation proceedings before the end of the deferral period in an effort to revoke, not extend, the disposition order.
Thus, although the State could have sought an extension under RCW 13.40.127(8), the juvenile court erred in concluding that the law required the State to so elect. Rather, under the May and Y.I. rule, the juvenile court retains jurisdiction to enforce, and in this case revoke, a disposition order when, as here, the State institutes violation proceedings before the deferral period expires. Thus, the juvenile court erred in rejecting Todd's admission and in striking the State's motion to revoke the order.
We reverse and remand to the juvenile court for consideration of the State's motion to revoke Todd's deferred disposition and for such further proceedings as are appropriate.
ARMSTRONG, C.J., and QUINNBRINTNALL, J., concur.
NOTES
[1] The order further stated that Todd had been "advised that violation of any of the conditions of this deferred disposition shall result in revocation of this order[.]" (emphasis omitted).
[2] At oral argument before this court, Todd's counsel acknowledged that the trial court had the discretion to revoke the deferred disposition but contended that the court also had discretion to rule as it did in an effort to discourage "administrative inertia." See State v. May, 80 Wash. App. 711, 717, 911 P.2d 399 (1996). Counsel apparently believed that the juvenile judge ruled as she did because she was dissatisfied with the State's lack of precision in its phrasing of the motion to revoke.
[3] As a mandatory condition of community supervision, a deferred disposition must order the juvenile to refrain from committing any new offenses. RCW 13.40.020(4).
[4] As part of its conclusion, the court found that if the State found itself in a "time crunch," i.e., unable to adjudicate the violation before expiration of the period, the State should have sought an extension of the deferral period under RCW 13.40.127(8).