[No. 66462-0-I.  Division One.  December 19, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. J.O., *Appellant*.

*Jennifer J. Sweigert* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*David S. McEachran, Prosecuting Attorney*, and *Shannon R. Connor, Deputy*, for respondent.

¶1 SPEARMAN, J. — In *State v. May*, 80 Wn. App. 711, 911 P.2d 399 (1996), we held that a juvenile court's authority to enforce its disposition order terminates when the community supervision period expires, unless a violation proceed-

ing is then pending before the court. We have applied this bright-line rule in the context of deferred dispositions granted to juveniles under RCW 13.40.127. *State v. Todd*, 103 Wn. App. 783, 789-91, 14 P.3d 850 (2000). The issue in this case is whether this rule applies to the statutorily mandated requirement to submit a DNA (deoxyribonucleic acid) sample when set forth in a juvenile court's order of deferred disposition. J.O. argues that the trial court erred because it did not apply the rule in his case. The State contends *May* and *Todd* apply only to discretionary conditions imposed by the court, not to requirements that are statutorily mandated by the legislature. For the reasons set forth herein, we agree with J.O. and reverse the juvenile court's order compelling J.O. to provide a DNA sample and remand for further proceedings consistent with this opinion. While J.O. also argues that collection of the sample violated his privacy rights, we do not reach that issue.

### FACTS

¶2  J.O., a juvenile, was charged by amended information with one count of taking a motor vehicle without the owner's permission in the second degree, a felony. After stipulating to the facts contained in the written probable cause statement and police reports, J.O. requested a deferred disposition under RCW 13.40.127. In his statement for a deferred disposition, he was informed of the conditions of community supervision that could be imposed, as well as the requirement under RCW 43.43.754 that he submit a biological sample for purposes of DNA identification.

¶3  The juvenile court found J.O. guilty as charged and granted J.O.'s request for a deferred disposition. Under the order of deferred disposition, entered on April 28, 2010, J.O. was ordered to serve six months of community supervision and pay restitution in the amount of $2,219.21. The order set forth various "Conditions of Supervision" in paragraph 4.3 and also set forth a requirement of DNA testing in paragraph 4.12:

DNA TESTING. The respondent shall have a biological sample collected for purposes of DNA identification analysis and the respondent shall fully cooperate in the testing. The appropriate agency shall be responsible for obtaining the sample prior to the respondent's release from confinement. RCW 43.43.754.

The deferral period was to end with a compliance hearing on October 27, 2010.

¶4 On October 20, 2010, the State filed a motion to revoke the deferred disposition based on J.O.'s expulsion from school and his failure to pay restitution. On October 27, the court entered an order continuing the revocation hearing to December 9, 2010 "for additional preparation and for contested hearing and appointment of new counsel." At the December 9 hearing the parties announced that a resolution had been reached and the State had agreed to withdraw the motion to revoke. All but roughly $70 of the restitution had been paid, and the remainder would be paid by the end of that day. J.O. then requested that he be excused from providing the DNA sample. The court stated that it had not been aware the DNA sample was an issue that day, and because the parties were not prepared to argue the matter, it continued the proceeding. The court advised the parties that if they could not resolve the issue by agreement, it should be noted for a motion.

¶5 The following week, J.O. asked the court to sign the order of dismissal. The State objected because the DNA sample had not been provided and because it had noted a motion to compel J.O. to provide the sample, which was to be heard the following week.[1] The court declined to sign the proposed order of dismissal until the DNA issue was resolved.

¶6 At the December 22 hearing on the State's motion to compel, J.O. argued that the deferred disposition period had

---

[1] The State apparently filed a written motion compelling the collection of DNA, but it is not in the record.

ended on October 27 and the court no longer had authority to enforce the DNA requirement. He argued that the probation department had had six months to collect the DNA sample but failed to do so. The State claimed that when the probation officer initially requested J.O. to provide the DNA sample, J.O.'s mother objected. The court ruled that because the motion to revoke was filed before the deferral period expired, the motion to revoke was pending on December 9, and the DNA issue was raised before that motion was resolved, the issue was properly before it. The court further ruled that J.O. was required under RCW 43.43.754 to provide the DNA sample. It ordered him to provide the sample but agreed that the probation department would retain possession of the sample pending resolution of this appeal.[2] On January 4, 2011, the court entered an order of dismissal, vacating J.O.'s conviction and dismissing the charges against him with prejudice. J.O. appeals the order compelling him to provide a DNA sample.

## DISCUSSION

¶7 J.O.'s appeal presents the issue of the juvenile court's authority to enforce an order entered pursuant to a deferred disposition. This is a question of law that we review de novo. *State v. Y.I.*, 94 Wn. App. 919, 922, 973 P.2d 503 (1999). J.O. claims the juvenile court lacked authority to compel him to provide a DNA sample because the State did not bring a written motion to revoke the deferred disposition on this ground before the end of the deferral period. He cites *State v. Tucker*, 171 Wn.2d 50, 53, 246 P.3d 1275 (2011), *Y.I.*, and *May* in support.

¶8 The State acknowledges that under *May* and *Tucker*, a court loses authority to enforce a condition of a juvenile's community supervision when a violation of the condition is not alleged by written motion prior to the

---

[2] The court's written order compelling a DNA sample was entered on December 22, 2010.

expiration of the deferral period. But the State argues that those cases do not control here because providing a DNA sample is a mandatory requirement imposed by the legislature while *May* and *Tucker* apply only to those conditions that may be imposed in the court's discretion.[3] We disagree.

¶9 In *Y.I.*, the juvenile respondent failed to pay the victim penalty assessment (VPA) imposed at disposition. After the period of community supervision ended, his probation officer filed a petition to review the conditions of supervision. At the review hearing the court ordered Y.I. to serve three days of confinement unless he paid the VPA or performed community service in lieu of payment.[4] On appeal we rejected the State's arguments that *May* applied only to community supervision, not to the entire disposition order, and that community supervision did not include the victim penalty assessments. We explained:

> Disposition orders encompass many obligations. The VPA is one of them. A juvenile who does not satisfy all his or her financial penalties while on supervision should not be under a constant threat of incarceration until his or her 18th birthday.

---

[3] The State contends that RCW 43.43.754(8) supports its position. RCW 43.43.754(8) provides:

The detention, arrest, or conviction of a person based upon a database match or database information is not invalidated if it is determined that the sample was obtained or placed in the database by mistake, or if the conviction or juvenile adjudication that resulted in the collection of the biological sample was subsequently vacated or otherwise altered in any future proceeding including but not limited to posttrial or postfact-finding motions, appeals, or collateral attacks.

The State argues that under the language of the provision, a juvenile who is granted a deferred disposition for a felony offense is required to provide a DNA sample regardless of whether the deferred disposition is granted by the court and could possibly be dismissed and vacated at a later date. RCW 43.43.754(8) is not relevant to the issue we decide, as the statute plainly does not govern the collection of samples or clarify whether there are limits to the trial court's authority to compel such collection to begin with.

[4] *Y.I.* involved four separate disposition orders, each containing the victim penalty assessments. The community supervision period for the first and second cases ended by May 27, 1997 and the period for the third and fourth cases ended on November 30, 1996. The probation officer filed a petition to review conditions of community supervision in all four cases on September 22, 1997, by which time all of the supervision periods had ended.

> If the legislature had so intended, it would have enacted a specific grant of jurisdiction, as it did for restitution.

*Y.I.*, 94 Wn. App. at 923-24. We held that *May*'s reasoning applied equally to the financial obligation and community supervision provisions of a disposition order.

¶10 Here, as in *Y.I.*, we can discern no reason to treat the order requiring J.O. to provide a DNA sample differently from the other orders with which J.O. was required to comply in order to successfully complete his deferred disposition. As we stated in *Y.I.*, a juvenile who fails to comply with this provision should not be under threat of incarceration until his or her 18th birthday and if the legislature had so intended, it would have done so, as it did for restitution. Nor is the State unduly burdened by the requirement that it monitor the juvenile's compliance with providing a DNA sample and act promptly to bring a violation to the court's attention. We conclude that where the State fails to comply with the bright-line rule set forth in *May*, the court is without authority to enforce its order that J.O. provide a DNA sample.

¶11 We now turn to the issue of whether, in this case, the State properly raised the DNA issue by motion before the end of the deferral period. J.O. argues that the State's motion to revoke on other grounds did not preserve the court's authority to compel J.O. to provide a DNA sample. The State argues that where it filed a motion to revoke before the expiration of the deferral period, the court retained its authority until it made a determination on the outstanding issues. It contends that because J.O. still had not paid restitution in full or provided a DNA sample when the motion was heard, the court could not find that he had completed the obligations of community supervision.

¶12 We conclude the State did not timely raise the issue. Although the State was not required to provide a detailed description of the facts regarding the alleged violation, due process requires, at a minimum, notice of the alleged

violation. *Todd*, 103 Wn. App. at 788-90. The superior court criminal rules apply to juvenile offense proceedings when the juvenile court rules are not inconsistent. *Tucker*, 171 Wn.2d at 53 (citing JuCR 1.4(b)). The criminal rules provide that CR 7(b) governs motions in criminal cases. *Id.* (citing CrR 8.2). Under CR 7(b), a motion must state with particularity the relief sought and the grounds for relief. *Id.*

¶13 Here, there was no mention of the DNA issue in the State's motion to revoke filed on October 20, 2010, and the motion to compel the DNA sample was apparently not filed until *after* the deferral period, which ended on October 27, 2010. We reject the State's argument that the continuance extended the court's authority to compel the DNA sample. Our review of the record shows that the court's continuance was not a continuance of the deferral period under RCW 13.40.127(8)[5] but rather a continuance to consider the issues arising out of the State's timely filed motion to revoke. Again, that motion did not mention J.O.'s failure to provide a DNA sample.

¶14 In conclusion, we hold that *May* applies to the DNA sample requirement when set forth in a juvenile court's order of deferred disposition. Therefore, the court loses authority to enforce the requirement if the issue is not raised by written motion before the end of the deferral period.

¶15 Reversed and remanded with instructions to destroy the DNA sample.

BECKER and COX, JJ., concur.

---

[5] RCW 13.40.127(8) provides, "At any time following deferral of disposition the court may, following a hearing, continue the case for an additional one-year period for good cause." The one-year extension rule under RCW 13.40.127(8) "suggests a legislative intent to offer the court additional flexibility when the court determines that the juvenile might require or benefit from additional supervision." *Todd*, 103 Wn. App. at 791. The rule "does not apply where the State institutes violation proceedings before the end of the deferral period in an effort to revoke, not extend, the disposition order." *Id.*