# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                          |   |                     |
|--------------------------|---|---------------------|
| STATE OF WASHINGTON,     | ) | No. 74053-9-I       |
|                          | ) |                     |
| Respondent,              | ) | DIVISION ONE        |
|                          | ) |                     |
| v.                       | ) |                     |
|                          | ) |                     |
| D.D.-H. (DOB: 3-28-99),  | ) | PUBLISHED           |
|                          | ) |                     |
| Appellant.               | ) | FILED: December 5, 2016 |
|                          | ) |                     |

Cox, J. — D.D.-H. appeals the juvenile court's order on revision, arguing that the court lacked jurisdiction beyond the originally scheduled expiration of his community supervision. Because he was on warrant status four times during that supervision, he was then outside the court's jurisdiction. Thus, tolling applied and community supervision did not expire on the originally scheduled date of expiration. The juvenile court retained jurisdiction to modify the disposition order and impose sanctions during the additional tolled period. D.D.-H. also received the due process to which he was entitled. We affirm.

The material facts are undisputed. D.D.-H. pleaded guilty to one count each of third degree theft and minor in possession of intoxicants. The disposition order directed him to serve concurrent 12 month terms of community supervision for each count, beginning immediately on February 19, 2014. As a condition of supervision, the court ordered that D.D.-H. regularly inform his probation officer of his whereabouts.

On four occasions, D.D.-H. violated this condition and was unavailable for supervision. The court issued the first bench warrant for such a failure on February 27, 2014, which police served on April 25, 2014. It issued the second on June 9, 2014, served on April 25, 2014. It issued the third on September 4, 2014, served on September 20, 2014. It issued the fourth on November 20, 2014, served on December 20, 2014.

A detention hearing followed the service of each of the four warrants, followed by the scheduling of a probation violation hearing. At each hearing, the court modified its original disposition order.

At no time during the original period of supervision did the court enter any orders on tolling or extension of community supervision. Moreover, there was no discussion of either subject at any court hearings during that period.

D.D.-H. was not on warrant status when his supervision was originally set to expire on February 19, 2015. No notice of violation was outstanding.

On February 24, 2015, five days after the originally scheduled expiration of community supervision, the court issued a fifth bench warrant for D.D.-H.'s alleged failure to inform his probation officer of his whereabouts. Police arrested and served the warrant on him the next day.

On March 4, 2015, the State filed a notice of violation and the court held a probation violation hearing the next day. D.D.-H. challenged the jurisdiction of the juvenile court at this March 5, 2015 hearing.

D.D.-H. moved to dismiss, arguing that the juvenile court's jurisdiction ended on February 19, 2015. Thus, he argued, the court could not modify

2

supervision after that date. The juvenile court commissioner disagreed and "tolled" community supervision for the periods of time D.D.-H. was on warrant status and unavailable for supervision: 122 days. The commissioner set the time for community service to expire as June 21, 2015.

D.D.-H. moved to revise the commissioner's order. A superior court judge denied the motion, ruling that the juvenile court maintained jurisdiction after the February 19, 2015 originally scheduled expiration of community supervision.

D.D.-H. appeals.

## JUVENILE COURT JURISDICTION

We must decide whether a juvenile's community supervision is tolled when he is on warrant status and not subject to supervision.

The Juvenile Court and Juvenile Justice Acts of 1977 (JJA), chapters 13.04 and 13.40 RCW, govern the operation of the juvenile courts. In enacting the JJA, the legislature sought to hold juveniles accountable for their crimes and deal with juvenile offenders in a consistent manner, while preserving the rehabilitative goals of the juvenile justice system.[1]

The JJA grants the juvenile court authority to impose a period of community supervision for up to one year for non-sex offenses.[2] When a juvenile violates his supervision requirements, the court may modify its disposition order and impose sanctions.[3]

---

[1] State v. V.J., 132 Wn. App. 380, 383, 132 P.3d 763 (2006).
[2] RCW 13.40.0357.
[3] RCW 13.40.070.

3

But the JJA does not specify for how long this authority exists. Likewise, the JJA lacks any express provision for tolling.

We review de novo whether the juvenile court had jurisdiction.[4]

The question in this case is whether a juvenile's community supervision tolls when he is on warrant status and unavailable for supervision, where there is no order expressly tolling supervision. This court dealt with a similar issue in State v. V.J.[5]

In that case, we decided that City of Spokane v. Marquette was instructive as to whether tolling of community supervision was proper.[6] We, again, turn to that supreme court case.

There, Marquette pleaded guilty in municipal court to reckless driving. On February 22, 1996, the court fined him and sentenced him to 365 days in jail, with 364 days suspended for 24 months of probation.[7] His probation was dependent on certain conditions. He violated those conditions.

Based on his failures to comply with probation conditions, the court issued three bench warrants.[8] Following service of each warrant, the court held hearings on the alleged violations.

In total, Marquette was on warrant status three times.[9] The first period lasted 107 days, from March to June 1996, because he failed to report for his one day in jail. The second period lasted 65 days, from August to October 1997,

---

[4] City of Spokane v. Marquette, 146 Wn.2d 124, 129, 43 P.3d 502 (2002).
[5] 132 Wn. App. 380, 132 P.3d 763 (2006).
[6] 146 Wn.2d 124, 130, 43 P.3d 502 (2002).
[7] Id. at 126.
[8] Id. at 127-27.
[9] Id. at 128-29.

because he failed to appear at a show cause hearing. And the third period lasted eight days, during July 1998, because he failed to appear at another show cause hearing.

The supreme court explained that the relevant statute limited the municipal court's probation authority to two years, but tolling of this period occurred when "the probationer is not subject to the jurisdiction of the court" because of his warrant status.[10]

In doing so, the supreme court followed the court of appeals decision in Gillespie v. State.[11] There, the trial court sentenced Gillespie to probation in 1972.[12] Gillespie disappeared and the court issued a bench warrant on September 11, 1972.[13] Police arrested him on September 15, 1974.[14] The court of appeals held that the probation period tolled for the entire time Gillespie was on warrant status.[15] The court of appeals explained that the purpose of probation was rehabilitation which defendant frustrated by eluding the court's supervision.[16]

RCW 13.40.020(5) confers on juvenile courts authority to impose a set period of community supervision. D.D.-H. was not subject to court supervision for the total period he was on warrant status: 122 days. We conclude that tolling for this period was appropriate and occurred as a matter of law. Thus, his term of community service did not expire on the originally scheduled date: February

---

[10] Id. at 130.
[11] 17 Wn. App. 363, 563 P.2d 1272 (1977).
[12] Id. at 364.
[13] Id.
[14] Id.
[15] Id. at 368.
[16] Id. at 365-67.

19, 2015. The court maintained jurisdiction for the 122-day period following that date.

D.D.-H. concedes that the juvenile court has authority to toll community supervision when a juvenile is on warrant status. But he argues the juvenile court's jurisdiction ends at the originally scheduled expiration of supervision unless a violation proceeding is pending at that time. He relies on State v. May[17] and State v. Y.I.[18]

In May, the juvenile court sentenced May to 12 months of community supervision.[19] Two days before the expiration of that period, May's probation counsellor submitted a report to the State showing that May had violated his supervision conditions.[20] Eight days after the supervisory period ended, the State moved for a show cause proceeding regarding the violations.[21] Almost three weeks later, the juvenile court ordered sanctions against May.[22]

May appealed, challenging the juvenile court's jurisdiction.[23] The State countered that, similar to the adult sentencing framework, the juvenile court should retain jurisdiction until a defendant satisfies all community supervision conditions or ages out of the juvenile system.[24] Division Three of this court determined that such a holding impaired the legislative intent underlying the

---

[17] 80 Wn. App. 711, 911 P.2d 399 (1996).
[18] 94 Wn. App. 919, 973 P.2d 503 (1999).
[19] May, 80 Wn. App. at 712.
[20] Id. at 713.
[21] Id.
[22] Id. at 714.
[23] Id.
[24] Id. at 715.

JJA.[25] That act sought to avoid leaving juveniles "at the mercy of the State's administrative bureaucracy" because the juvenile cannot, unlike the probationer, obtain an order or discharge releasing him from supervision.[26] Accordingly, the court opted for a "bright-line rule that clearly defines the juvenile court's jurisdiction."[27]

Under that rule, a juvenile court's "jurisdiction to enforce its disposition order terminates when the community supervision period expires, unless a violation proceeding is then pending before the court."[28] Division Two of this court later held in State v. Todd that this rule requires the State to "institute violation proceedings before the expiration of the deferral period."[29] Placing the burden to institute an action on the State thus guards against administrative inertia.[30] Our supreme court recently cited Todd in confirming the validity of this rule.[31]

In State v. Y.I., we applied May's logic to the context of a juvenile's legal financial obligations.[32] In that case, Y.I.'s probation officer filed a petition to review conditions of community supervision after the original expiration of supervision, citing Y.I.'s failure to pay his Victim Penalty Assessment.[33] The juvenile court ordered confinement unless he paid his assessment or performed

---

[25] Id. at 715-16.
[26] Id. at 716.
[27] Id.
[28] Id. at 717.
[29] State v. Todd, 103 Wn. App. 783, 790, 14 P.3d 850 (2000).
[30] Id.
[31] State v. Tucker, 171 Wn.2d 50, 53, 246 P.3d 1275 (2011).
[32] 94 Wn. App. 919, 922, 973 P.2d 503 (1999).
[33] Id. at 921.

community service.[34] Applying May, we concluded the court lacked jurisdiction to enter this order after supervision had expired.[35]

But May and Y.I. are distinct from this case. May considered "whether the juvenile court retains jurisdiction to consider alleged violations that occurred during community supervision, but are not brought to the court's attention until after the supervisory period expires."[36] Similarly in Y.I., the probation officer only filed his petition after the original expiration of supervision. Thus, on neither occasion did the trial court have the opportunity to issue a bench warrant or place the juvenile on warrant status. In contrast, the State instituted violation proceedings each time D.D.-H. violated the conditions of his supervision. The court placed him on warrant status several times, prior to the original expiration of supervision, which tolled the supervisory period.

Such a conclusion does not deprive May's bright line rule of its force. If the State does not institute a violation hearing and no bench warrant issues, supervision will not toll. Similarly, as Marquette explained, tolling may not occur when police are not diligent in serving that warrant.[37] Neither circumstance exists in this case.

D.D.-H. next attempts to distinguish V.J. because V.J. was on warrant status when his supervision ended but D.D.-H. was not. He is correct on this factual matter but this factual distinction does not change our conclusion.

---

[34] Id.
[35] Id. at 923.
[36] May, 80 Wn. App. at 714.
[37] Marquette, 146 Wn.2d at 132.

8

In Marquette, upon which V.J. relied, community supervision was originally scheduled to expire 24 months after the February 22, 1996 sentencing.[38] Marquette was not on warrant status on February 22, 1998, the originally scheduled expiration of probation. Nevertheless, the court held that the earlier periods of warrant status tolled his probation.[39] Accordingly, we conclude that whether a juvenile is on warrant status at the originally scheduled expiration of his supervision is not material. Rather, whether a juvenile is on warrant status at any time during community supervision is the proper inquiry.

D.D.-H. argues, nonetheless, that the court must affirmatively order supervision tolled before supervision is originally set to expire. But as we have explained, tolling occurs by operation of law when the juvenile is on warrant status. No order is necessary.

D.D.-H. next argues that due process requires notice prior to the expiration of the originally scheduled community supervision period that supervision has tolled. We disagree for the reasons already stated.

To summarize, because D.D.-H. was on warrant status for 122 days and not subject to the court's supervision during that period, tolling applied by operation of law. Supervision tolled for those additional days beyond the originally scheduled expiration. The State in this case instituted violation proceedings before that original expiration, the court issued bench warrants each time, and police diligently served those warrants. D.D.-H. thus received the due process to which he is entitled.

---

[38] Id. at 126.
[39] Id. at 134.

Yet D.D.-H. contends that notice was required under RCW 13.40.200(2). That statue entitles a juvenile to "the same due process of law as would be afforded an adult probationer." Thus, we must consider what due process is owed the adult probationer. On this point, D.D.-H. cites State v. Campbell.[40]

In that case, the State sought a review hearing to extend a probation term while Campbell underwent psychiatric treatment.[41] The trial court scheduled a hearing, giving notice to Campbell and his counsel, but then cancelled it upon Campbell's therapist's recommendation.[42] The court then, without notice to Campbell, entered an ex parte order to extend the probation term.[43]

After the original expiry date of probation, the court again extended the probationary period.[44]

In that case, our supreme court first considered whether a court could extend probation by an ex parte order and second whether the probationer's commitment to a psychiatric institution tolled probation.[45]

Regarding the first question, the court held that due process required "courts in this state to provide notice to probationers not only of proposed revocations, but also extensions, and advise them that they have a right to a hearing."[46]

---

[40] 95 Wn.2d 954, 632 P.2d 517 (1981).
[41] Id. at 955.
[42] Id.
[43] Id.
[44] Id. at 956.
[45] Id. at 957-58.
[46] Id. at 959.

10

But the court upheld the extension because Campbell's probation tolled while he was committed to psychiatric treatment.[47] It likened such circumstance to a probationer who is "generally out of the jurisdiction contrary to the terms of probation."[48]

Here, the juvenile court extended the supervision period without providing prior notice to D.D.-H. that his supervision would toll. But tolling occurred by operation of law. For the pendency of his warrant status, D.D.-H. was outside the trial court's jurisdiction. Rather than supporting his right to notice that this time would be tolled, Campbell demonstrates that it tolled by operation of law. As such, there was no new imposition upon D.D.-H.'s liberty that would require notice.

We affirm the order on revision and the modification of the disposition order and imposition of sanctions.

_____
Cox, J.

WE CONCUR:

_____

_____

---

[47] Id. at 957.
[48] Id.; see also State v. Frazier, 20 Wn. App. 332, 334, 579 P.2d 1357 (1978).

**State of Washington v. D.D.-H. (DOB: 03-28-99), No. 74053-9-I**

SPEARMAN, J. (CONCURRING)

I concur with the result because, as set out in the majority opinion, case law

dictates that the probationary period is tolled by operation of law for those time periods

when the probationer is on warrant status and not subject to the jurisdiction of the court.

I write only to make the observation that adult offenders, whether on probation in courts

of limited jurisdiction or in superior court, are provided with explicit notice by statute that

if they abscond from supervision the probationary period is tolled during their absence.[1]

No such explicit authorization for or notice of tolling is to be found in the Juvenile Justice

Act of 1977, chapters 13.04 and 13.40 RCW.

In this case, the record contains no indication that D.D.-H. was ever given notice,

either by the court or by statute, that as a result of his failures to report to his probation

officer his probation would be extended beyond the original two year term. We do not

know whether, had D.D.-H. been so advised, it would have made a difference in his

behavior. But the purpose of providing notice is two-fold: to give fair warning of the

sanctions that may follow certain behavior and to provide the offender a fair opportunity

to avoid conduct that may result in further punishment. Neither of those goals are

satisfied by the result in this case.

---

[1] For probationers in superior court, RCW 9.94A.171(2) provides: "Any term of community custody shall be tolled by any period of time during which the offender has absented himself or herself from supervision without prior approval of the entity under whose supervision the offender has been placed." For probationers in courts of limited jurisdiction, RCW 3.66.068(3) provides: "A defendant who has been sentenced, or whose sentence has been deferred, and who then fails to appear for any hearing to address the defendant's compliance with the terms of probation when ordered to do so by the court, shall have the term of probation tolled until such time as the defendant makes his or her presence known to the court on the record."

While it is true that a review of the case law may very well have warned D.D.-H. of the tolling effect of warrant status, it is anomalous that we burden only juvenile, but not adult probationers, with this responsibility.

_Spelman, J._